IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARRIS O'MALLEY d/b/a | § | |
| DOCTOR NERD LOVE and d/b/a | § | |
| WWW.DOCTORNERDLOVE.COM | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 1 :13-cv-1019 |
| v. | § | |
| | § | |
| YASHAR HEDAYAT a/k/a YASHAR | § | |
| ALI and d/b/a GOPLIN GROUP and d/b/a | § | |
| WWW.THECURRENTCONSCIENCE. | § | |
| COM | § | |
| | § | |
| *Defendant*. | § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Harris O'Malley d/b/a Doctor Nerd Love and d/b/a www.DoctorNerdLove.com ("Plaintiff"), files this Original Complaint for Declaratory Judgment seeking a judgment and injunctive relief against Defendant, Yashar Hedayat a/k/a Yashar Ali and d/b/a Goplin Group and d/b/a www.TheCurrentConscience.com ("Defendant"), regarding a controversy in which Defendant has accused Plaintiff of copyright infringement and acts of unfair competition, and threatened to take imminent steps to defame Plaintiff's reputation.  For his complaint, Plaintiff states as follows:

**PARTIES**

1.    Plaintiff Harris O'Malley is an individual who is a citizen of the State of Texas and resides in Austin, Texas.

2.    Defendant Yashar Hedayat a/k/a Yashar Ali is an individual who is a citizen of the State of California and resides at 9663 Santa Monica Blvd. Apt. 222, Beverly Hills, California 90210-4303.  He may be served with process at 9663 Santa Monica Blvd. Apt. 222,

Beverly Hills, CA 90210-4303.

## JURISDICTION AND VENUE

3.      This suit is based on the laws of the United States, the Federal Declaratory Judgment Act, and the laws of Texas involving Declaratory Judgments and Unfair Competition.

4.      This is an action for a declaratory judgment, together with such further relief based thereon as may be necessary or proper, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Texas Declaratory Judgment Act, Texas Civil Practice and Remedies Code Section 37.004(1).

5.      The matter in controversy herein exceeds the sum or value of $75,000 exclusive of interest and costs.

6.      The basis for declaratory judgment jurisdiction is, as fully appears below, an actual controversy between Plaintiff and Defendant arising under the United States copyright laws, Title 17 of the United States Code §§ 101 et seq., the United States trademark laws, Title 15 of the United States Code §§ 1111 et seq., and under state unfair competition laws.

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b), 28 U.S.C. §§ 2201 and 2202, and 15 U.S.C. § 1121.

8.      This Court has personal jurisdiction over Defendant because (i) he engages in a regular and continuous course of business in Texas by publishing an interactive web site throughout the United States including Texas; and (ii) the acts complained of herein occurred and are occurring in Texas and have caused damage to Plaintiff in Texas.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391 (b) and (c) and 28 U.S.C. § 1400 because the acts complained of herein occurred and are occurring in Texas and have caused damage to Plaintiff in Texas, and Defendant can be found in Texas and is subject to

personal jurisdiction in Texas based on his regular and continuous course of business in Texas.

10.    Plaintiff brings this suit based on an actual controversy existing between Plaintiff and Defendant as to the alleged infringement and unfair competition in violation of United States and Texas statutes and laws on copyrights and unfair competition.

11.    Defendant has threatened to take imminent steps to defame Plaintiff's reputation.

12.    A ruling by this Court will settle all disputes between Plaintiff and Defendant.

13.    This Court has pendent jurisdiction over the state claims herein under the provisions of 28 U.S.C. § 1338(b) because these claims are joined with substantial and related claims under the Copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and the other federal claims described herein.

14.    The suit is based on a Federal question and statute, namely 17 U.S.C. § 501 et seq.

15.    A substantial portion of the events giving rise to the causes of action described herein occurred and are ongoing in Austin, Texas in the Western District of Texas.

16.    Defendant is a California resident doing business in the State of Texas.

17.    Defendant has been doing business in this judicial district at all relevant times by actively offering for sale and selling and advertising his products and services which are the subject of this suit in the state of Texas and in the Western District of Texas.

18.    Plaintiff has his principal place of business and residence in the Western District of Texas and has sold goods and services in this judicial district.

19.    This is an action for declaratory judgment of non-infringement and unenforceability of the alleged copyright in the Defendant's work entitled "A Message to Women from a Man: You Are Not 'Crazy'" in comparison to Plaintiff's work entitled "On

Labeling Women Crazy."

20.     This Court has personal jurisdiction over Defendant pursuant to Texas Civil Practice and Remedies Code § 17.042, the Texas Long Arm Statute, because he has continuously and systematically transacted business in the State of Texas and the Western District of Texas, maintained a general presence in the State of Texas and the Western District of Texas through sales and advertising of the infringing products at issue in this action, and established minimum contacts with the forum, for which the exercise of personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

21.     Defendant published the allegedly infringed article at issue in this action that has been distributed and made available throughout the United States, including within the State of Texas.

22.     Defendant operates an interactive website, and through this website publishes and markets his entertainment services at issue in this action throughout the United States, including the State of Texas.

23.     Defendant actively promotes his publications and entertainment services at issue in this action throughout the United States, including within the State of Texas, through his website and the websites of others, as well as through advertising and sponsorships of his web site.

24.     Defendant founded, owns, and operates the www.theCurrentConscience.com website, which he uses to publish his works throughout the United States, including within the State of Texas.

25.     A primary advertiser on Defendant's web site is Dell Computers which is headquartered in Austin, Texas.

26.     The Huffington Post, where both of the articles in dispute were published, includes millions of references to Texas and posts by residents of Texas.

27.     There is a HuffPost Texas, http://www.huffingtonpost.com/news/texas/, that is part of the Huffington Post that is specifically directed toward Texas.

28.     Plaintiff is a resident of this judicial district and this is the judicial district in which this claim arose.  Specifically, both of the parties' goods and services are for sale in the Western District of Texas.

## NATURE OF THIS ACTION

29.     In this action, Plaintiff seeks a declaratory judgment regarding both preliminary and permanent injunctive relief and damages for alleged acts of copyright infringement and unfair competition in violation of the laws of the United States and of the States of Texas.

## FACTUAL BACKGROUND

30.     Harris O'Malley provides geek dating advice at his blog entitled "Paging Dr. NerdLove" at http://www.doctornerdlove.com/, as well as by writing the occasional guest review for Spill.com and appearing on the podcast entitled "The League of Extremely Ordinary Gentlemen."  He can be found on Facebook and Twitter @DrNerdLove.

31.     Plaintiff's article entitled "On Labeling Women 'Crazy'" was originally posted on Plaintiff's website at http://www.doctornerdlove.com/2012/07/labeling-women-crazy/ on July 6, 2012, and still appears there to this day.

32.     In a cease and desist letter dated November 19, 2013, Defendant claimed that Plaintiff's article infringes upon the copyright in Defendant's article entitled "A Message to Women From a Man: You Are Not 'Crazy'," which was originally posted on the Defendant's website entitled "The Current Conscience" at www.thecurrentconscience.com on September

12, 2011, and The Huffington Post that same day.  Attached as Exhibit A is a side-by-side comparison of these two articles.

33.     In November of 2013, The Huffington Post contacted Plaintiff in Texas and requested permission to post Plaintiff's article "On Labeling Women 'Crazy'" on The Huffington Post website on November 12, 2013.

34.     Defendant claims he is a Los Angeles-based columnist, commentator, and political veteran whose writing is showcased on The Current Conscience website.

35.     Defendant did not graduate from a college or university and has no training in psychology or counseling.

36.     Defendant is not a mental healthcare professional.

37.     Any information that Defendant has about the psychology of women he learned from reading materials written by others knowledgeable in the field.

38.     Any information that Defendant has on the idea of "gaslighting" he copied from someone knowledgeable in the field.

39.     Defendant claims that he appears frequently as a commentator on state and national politics, and has been featured in The Wall Street Journal, TIME Magazine, The New York Observer, The Huffington Post, Jezebel, The New York Times, the San Francisco Chronicle, and that he has appeared regularly on the Patt Morrison show on Southern California Public Radio and NBC News.

40.     Any kind of word that aims to categorize a kind of behavior as abusive, dysfunctional, or simply bad is likely to find its criteria abused by laymen, due to a diagnostic vagueness that exists when diagnostic criteria only list what something is rather than what it is not.

41.    "Gaslighting" is a generic mental health term that originates from the 1938 play Gas Light and in recent years has exploded with popularity on blogs.

42.    There are several definitions of this term, but in a nutshell it refers to the act of trying to deceive someone into a false reality by discrediting their emotions.

43.    Like most mental health terms, it describes something serious; also like most mental health terms, it is ubiquitously misused.

44.    The Google trends search for "gaslighting" indicates it has been experiencing a surge of popularity since around 2010.

45.    Since at least 2010, this term describing a serious mental health threat has become popular on feminist, social justice, and progressive blogs due to a growing concern with mental health issues in general or because a lot of people find the term categorizes behaviors they do not like in a cognitively lazy way.

46.    Wikipedia explains the idea of "gaslighting" as follows:

Gaslighting is a form of mental abuse in which false information is presented with the intent of making a victim doubt his or her own memory, perception and sanity.[1] Instances may range simply from the denial by an abuser that previous abusive incidents ever occurred, up to the staging of bizarre events by the abuser with the intention of disorienting the victim.

The term "gaslighting" comes from the play Gas Light and its film adaptations. The term is now also used in clinical and research literature.[2][3]

1. Dorpat, T. L. (1994). "On the double whammy and gaslighting". *Psychoanalysis & Psychotherapy* 11 (1): 91–96.

2. Dorpat, Theodore L. (1996-10-28). *Gaslighting, the Double Whammy, Interrogation, and Other Methods of Covert Control in Psychotherapy and Psychoanalysis*. J. Aronson. ISBN 978-1-56821-828-1. Retrieved 2013-04-28.

3. Jacobson, Neil S.; Gottman, John Mordechai (1998-03-10). *When Men Batter Women: New Insights into Ending Abusive Relationships*. Simon and Schuster. pp. 129–132. ISBN 978-0-684-81447-6. Retrieved 2013-04-28.

47.     Wikipedia further explains:

The term derives from the 1938 stage play Gas Light (known as Angel Street in the United States), and the 1940 and 1944 film adaptations. The plot concerns a husband who attempts to convince his wife and others that she is insane by manipulating small elements of their environment, and subsequently insisting that she is mistaken or misremembering when she points out these changes. The title stems from the dimming of the house's gas lights which happens when the husband is using the gas lights in the attic while searching there for hidden treasure. The wife accurately notices the dimming lights, but the husband insists she is imagining.

The term "gaslighting" has been used colloquially since at least the 1970s to describe efforts to manipulate someone's sense of reality. In a 1980 book on child sex abuse, Florence Rush summarized George Cukor's 1944 film version of Gas Light, and writes, "even today the word [gaslight] is used to describe an attempt to destroy another's perception of reality."[4] The term was further popularized in Victor Santoro's 1994 book Gaslighting: How to Drive Your Enemies Crazy, which outlines ostensibly legal tactics the reader might use to annoy others.

   4. Rush, Florence (02 1992). *The best-kept secret: sexual abuse of children*. Human Services Institute. p. 81.ISBN 978-0-8306-3907-6. Retrieved 2013-04-28.

48.     Much has been written on the idea of "gaslighting" by health care professionals.  Examples of such writings are:

   a.     Portnow, Kathryn (1996). *Dialogues of Doubt: The Psychology of Self-Doubt and Emotional Gaslighting in Adult Women and Men*. Harvard Graduate School of Education. Retrieved 2013-04-28;

   b.     Santoro, Victor (1994-06-30). *Gaslighting: How to Drive Your Enemies Crazy. Loompanics Unlimited*. ISBN 978-1-55950-113-2. Retrieved 2013-04-28;

   c.     Stern, Robin (2007-05-01). *The Gaslight Effect: How to Spot and Survive the Hidden Manipulation Others Use to Control Your Life*. Random House Digital. ISBN 978-0-7679-2445-0. Retrieved 2013-04-28; and

   d.     Calef, V.; Weinshel, E. M. (January 1981). "*Some Clinical Consequences of Introjection: Gaslighting*". Psychoanal Q 50 (1): 44–66. PMID 7465707.

49.     Defendant's article "A Message to a Woman From a Man: You Are Not 'Crazy'" first appeared online on The Huffington Post on September 12, 2011.

50.     Defendant claims that Plaintiff's article "On Labeling Women 'Crazy'" incorporated the "heart" of Defendant's article without permission or attribution.

51.     Defendants claims that The Huffington Post reposted Plaintiff's article containing Defendant's work without permission or attribution.

52.     Defendant claims that Plaintiff's article has garnered considerable online attention since then and has been re-posted in a number of places, including but not limited to the following websites:

     a.     cchicagodefender.com;

     b.     orientalnights.wordpress.com;

     c.     blackdogtribe.com; and

     d.     balleralert.com

53.     Defendant also claims that Plaintiff's article has been linked to in other places.

54.     Articles like Plaintiff's and Defendant's may gain attention for a short period of time and then are replaced by another commentator or blogger on the same subject.

55.     Defendant claims that, based on a comparison of the two articles, a number of similarities cannot be explained away as a consequence of choosing the same subject matter to write about.  Defendant claims the most egregious examples are as follows:

| Ali | O'Malley |
|---|---|
| You're so sensitive. You're so emotional. You're defensive. You're overreacting. Calm down. Relax. Stop freaking out! You're crazy! I was just joking, don't you have a sense of humor? You're so dramatic. Just get over it already!<br><br>Sound familiar?<br><br>If you're a woman, it probably does. | Stop me if any of this sounds like something you've said -- or heard -- in a relationship: "You're overreacting"; "Don't worry about it so much, you're over-thinking it"; "Stop being so defensive."<br><br>It does to me. |
| Gaslighting is a term often used by mental health professionals (I am not one) to describe manipulative behavior used to confuse people into | ... gaslighting is a term used by psychologists to describe abusive behavior where a person is made to feel as though their emotions and reactions are |

| thinking their reactions are so far off base that they're crazy. | irrational, even (dare I say) crazy. |
|---|---|
| The form of gaslighting I'm addressing is not always pre-mediated or intentional, which makes it worse, because it means all of us, especially men, have dealt with it at one time or another. | It may not be something planned or pre-meditated, but the ease with which men call women "crazy" says a lot about them. |
| I don't think this idea that women are "crazy," is based in some sort of massive conspiracy. Rather, I believe it's connected to the slow and steady drumbeat of women being undermined and dismissed, on a daily basis. And gaslighting is one of many reasons why we are dealing with this public construction of women as "crazy." | We may not intend to manipulate women this way -- most of the time we're not even aware that we're doing it. Most of us are conditioned into it; it's a part of the subtle background radiation that still teaches us that women's desires and opinions are secondary to men's. |
| But isn't the issue of gaslighting ultimately about whether we are conditioned to believe that women's opinions don't hold as much weight as ours? That what women have to say, what they feel, isn't quite as legitimate? | Sure, we taught you that you should never trust your own feelings and that standing up for what you want is bad but there's no real harm done right? |
| So for many of us, it's first about unlearning how to flicker those gaslights and learning how to acknowledge and understand the feelings, opinions, and positions of the women in our lives. | As with other bad habits and acculturation, we need to unlearn this tendency to use "crazy" as a weapon. |

56.     On its face, there are insubstantial similarities between the above passages, much less the two articles.

57.     The only commonality between the passages and articles is that they relate to a similar idea; conversely, they do not relate to a similar expression.

58.     The similarities that Defendant asserts are "scenes a faire" in that they refer to common generic terms, story elements, language, etc., which are standard to a general theme or topic on "gaslighting" and are an indispensable part of that theme or topic and are not capable of being protected by copyright.

59.     Plaintiff's use of such common elements and language also constitutes fair use.

60.     Defendant claims that Plaintiff must have been reading Defendant's article while writing Plaintiff's article and tried to change enough language so that the copying would not be noticeable.

61.     A cursory reading of the passages and the articles reveals this assertion is baseless.

62.     Defendant also claims that the alleged copying was unintentional or subconscious.

63.     Plaintiff did not unintentionally or subconsciously copy Defendant's work.

64.     Plaintiff did not see Defendant's work until after Plaintiff's work was published.

65.     Defendant also claims that, even if this were not copyright infringement as a technical matter, it would still be plagiarism because of Plaintiff's lack of attribution to Defendant.

66.     Plaintiff did not engage in plagiarism of Defendant's work.

67.     There is no unfair competition claim for mere "plagiarism" of uncopyrighted works or portions of works.

68.     Defendant has demanded that Plaintiff immediately and permanently cease and desist from Plaintiff's alleged infringing activities as follows:

a.  "Take down your article from your website, The Huffington Post and any other forum in which you have syndicated or distributed your article; or

b.  Contact all blogs or websites that have otherwise re-posted your work and request that they take down your article;

c.  Cease and permanently desist from distribution of your article to any outlet in which it has not already appeared including without limitation any online or print media;

d.  Provide Mr. Ali with an accounting of any payments you have received in connection with your article and forward all such payments, if any, to Mr. Ali; and

e.  Cease and permanently desist from any media appearances in which you discuss your article, including without limitation any online or television outlet, and forward any such invitations to Mr. Ali."

69.     Defendant threatened that he would pursue more direct methods of taking down the allegedly infringing content if Plaintiff's article was still on Plaintiff's website and at the HuffPost website at 12 pm PST on November 25, 2013.

70.     Defendant has not registered any copyright in the United States Copyright Office that covers Defendant's article entitled "A Message to Women From a Man: You Are Not 'Crazy'."

71.     Copyright law protects expressions of ideas, not the underlying ideas or methods; however, in Defendant's cease and desist letter, Defendant asserts that his copyright protects the ideas in his article.

72.     If copyright exists in the Defendant's work, it exists only in Defendant's particular expression of the ideas as contained in his work.

73.     That is, the most Defendant can claim is a thin copyright in the specific expression in his work.

74.     The specific express in the Defendant's work consists of common and familiar expressions, which expressions are in widespread use by others in countless works.

75.     These familiar expressions and definitions therefore are in and of themselves not entitled to copyright protection.

76.     For those expressions of Plaintiff and Defendant that feature common and familiar elements, Plaintiff's expressions are not substantially similar to the Defendant's expressions.

77.     Defendant cannot meet his burden of showing the substantial similarity required between the Plaintiff's expressions and the Defendant's expressions to sustain a claim of copyright infringement.

78.     Plaintiff's expressions that do not feature such common and familiar elements are similarly not identical or even substantially similar to the Defendant's expressions.

79.     Plaintiff's work is not a derivative work of Defendant's work.

80.     In Defendant's cease and desist letter, Defendant mentions but does not provide details regarding its state law claims.

81.     Any claims that Defendant may make under state law for plagiarism or unfair competition would be preempted by Defendant's claims under the Copyright Act.

## DECLARATION OF NON-INFRINGEMENT OF COPYRIGHTS

82.      Plaintiff realleges and incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

83.     Defendant has asserted ownership of his work.

84.     Plaintiff's article does not infringe any of Defendant's works or any copyrights applied for or otherwise claimed to be owned by Defendant.

85.     Therefore, Plaintiff is entitled to a declaratory judgment that Plaintiff has not infringed any copyright owned by Defendant.

## DECLARATION OF NO VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125

86.     Plaintiff realleges and incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

87.     Plaintiff has not caused goods and services to enter into commerce regulated by Congress under any false designation or representation and has not engaged in false advertising and has not engaged in trade disparagement or palming off or any other act of unfair competition.

88.     Plaintiff's actions are not in violation of 15 U.S.C. § 1125 because Plaintiff has not used, in connection with goods and services, a false designation of origin or false description

or representation of fact including words and other symbols tending falsely to describe or represent the same, and has not caused such goods and services to enter into commerce.

89.     Therefore, Plaintiff is entitled to a declaratory judgment that Plaintiff has not violated the Lanham Act, 15 U.S.C. § 1125.

## DECLARATION OF NO UNFAIR COMPETITION

1.     Plaintiff realleges and incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

2.     Defendant has asserted unfair competition purportedly in violation of state law.

3.     Plaintiff has not engaged in unfair competition with Defendant.

4.     Therefore, Plaintiff is entitled to a declaratory judgment that Plaintiff has not committed any acts of unfair competition under the common law.

## JURY DEMAND

5.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of judgment and order as follows:

A.     That Defendant, and his agents, employees, attorneys, associates, and all other persons in active concert or participation with Defendant, be restrained and enjoined immediately and temporarily during the pendency of this action, and thereafter perpetually, from interfering with Plaintiff's publication of his article.

B.     Declaring and adjudging that Plaintiff has not infringed nor induced the infringement nor contributed to the infringement of any of the Defendant's works or any other applied for or claimed copyrights of Defendant;

C.      Declaring and adjudging that Plaintiff has not violated the Lanham Act, 15 U.S.C.

§ 1125, as a result of Plaintiff's publication of his article.

D.      Declaring and adjudging that Plaintiff has not engaged in any acts of unfair

competition or violated any other alleged state law rights of Defendant;

E.      Declaring that the idea of "gaslighting" is generic and describes the field of

Defendant's article, whose use is necessary for others to describe the genre of their activities.

F.      Declaring that Defendant is not entitled to any relief against Plaintiff for any

cause of action;

G.      Awarding Plaintiff his costs and expenses of this action as allowed by law,

together with his reasonable attorney's fees for bringing and prosecuting this action; and

H.      Awarding Plaintiff such other and further relief that the Court may deem just

and proper.

Dated: November 25, 2013.

                                        Respectfully submitted,

                                        Charles W. Hanor
                                        Bernie R. Kray
                                        Serena Hanor Aldrich
                                        Hanor Law Firm PC
                                        750 Rittiman Road
                                        San Antonio, Texas 78209
                                        Telephone: (210) 829-2002
                                        Facsimile: (210) 829-2001
                                        chanor@hanor.com
                                        bkray@hanor.com

                                        By:  /s/ Charles W. Hanor
                                             Charles W. Hanor
                                             Texas Bar No. 08928800

                                        ATTORNEYS FOR PLAINTIFF